UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 24-cr-441 (JEB) |
| | ) | |
| ISABELLA GIORDANO | ) | |
| | ) | |

**MEMORANDUM IN SUPPORT OF SENTENCING**

Ms. Isabella Giordano will appear before this Honorable Court for sentencing on March 19, 2025. She pleaded guilty to one count of Misdemeanor Destruction of Property for applying spray paint on the Columbus Circle Fountain. Because of the sentencing factors the Court is required to follow under 18 U.S.C. § 3553, the defense respectfully requests that the Court sentence Ms. Giordano to a sentence of time-served because that sentence is sufficient but no greater than necessary to punish her.

**Introduction**

On September 13, 2024, Ms. Giordano was arrested and first brought into Magistrate Court. Four feet eleven inches tall and twenty years old, she tearfully asked whether she was going to jail and what she could do to show how sorry she is. Since that moment, Ms. Giordano has done everything to answer that question on her own.

By the time she met this Court on October 10, 2024, Ms. Giordano had enrolled in therapy on her own, even though her Pretrial Assessment had concluded

that treatment was not necessary.  ECF No. 11 at 2.  She redoubled her efforts to obtain certification as a Registered Behavioral Technician—a program she remains enrolled in.  She ceased her sporadic use of marijuana and stopped spending time with those she knew to be bad influences on her.  But despite all of her attempts to show that she had made a spontaneous mistake during a lapse in judgment, she lost the job that she had loved, working as a childcare provider at a daycare center.  Working with children has long been Isabella's dream and she now reasonably fears that she has lost that dream forever because of her conduct in this case.

From the time she graduated high school, Isabella worked as a childcare provider for the Goddard School in Towson, MD.  She lost that job shortly after her arrest, which was reported in local media outlets.  As the Court can see in the letters from her friends, family, and former co-workers, her work teaching children gave her joy and she excelled at it.  One family member reported an "ability to connect with and positively influence children."  A parent from the school noted her consistent "kindness, professionalism and a deep understanding of children's needs."  She also displayed a particular compassion for those on the autism spectrum.

It is Isabella's hope that she will be able to overcome her termination from work, but for a young woman at the beginning of her professional life, the loss of what was both a dream job and a stepping stone job has been a devastating consequence for a momentary lapse of her judgment.  For that reason, the Court should conclude that a sentence of time-served is sufficient but no greater than

necessary as it would provide just punishment for the offense, afford adequate deterrence, assure that she would commit no further crimes and provide her with adequate training, care and treatment.

I. **The Appropriate Guideline Range is 0 to 6 months**

The appropriate guideline range for Ms. Giordano is 0 to 6 months. The guidelines apply as follows:

| | | |
|---|---|---|
| Base Offense Level | USSG §2B1.5(a) | 8 |
| Value $6500 to $14999 | | +2 |
| National Monument | | +2 |
| Acceptance of Responsibility | | -2 |
| Zero Point Offender | | -2 |
| Total Offense Level | | 8 |

II. **Under the § 3553(a) Factors, the Appropriate Sentence is time-served with no supervised release**

   **A. The History and Characteristics of Ms. Giordano**

Ms. Giordano is a twenty-one year old woman with no criminal record. She is a high school graduate who was a valuable employee for the Goddard School working in childcare. She was roundly considered exceptional at her job. She was known to her community as a kindhearted, loving and nurturing person who demonstrated loyalty and empathy to those around her.

In her letter, Ms. Giordano also demonstrated an admirable ability to learn and grow from her mistakes. After her arrest, she immediately enrolled in therapy, recognizing that she needed to "work on herself" regardless of whether it was ordered by the court (and continued to thrive in therapy even though it was not).

She has been working hard to make better decisions and is keeping better company. She has been deeply reflective of her role both as an individual and as an involved citizen. In short, she has matured and grown.

To that end, she has been studying online to become a Registered Behavioral Technician and hopes to complete that coursework soon. That certification will allow her to deliver direct services to autistic children implementing behavior intervention plans.

It should be noted that Ms. Giordano reports adolescent struggles due to problems within her family beyond her control. These troubles undoubtedly contributed to her spontaneous decision to follow the crowd and engage in her out-of-character lapse in judgment. Moreover, Ms. Giordano was particularly young.

Though Ms. Giordano is not a technically a teenager, it is still relevant that the Supreme Court has recognized developments in psychology and brain science showing that juveniles (1) "have a lack of maturity and underdeveloped sense of responsibility, leading to recklessness, impulsivity, and heedless risk-taking"; (2) "are more vulnerable to negative influences and outside pressures, including from their family and peers"; (3) "have limited control over their own environment and lack the ability to extricate themselves from horrific, crime-producing settings"; and (4) possess character traits that are "less fixed" than those of an adult. *Miller v. Alabama*, 567 U.S. 460, 471 (2012) (quotation marks and citations omitted). As a result, the Court has concluded that juveniles "have diminished culpability and greater prospects for reform." *Id.*; *see also Roper v. Simmons*, 543 U.S. 551, 569-70

(2005). These characteristics of young people surfaced during the Gaza protest. Ms. Giordano certainly decided in advance that she wanted to protest what was happening in Gaza and she most definitely had empathy, particularly towards the children who were suffering. But she had no designs to vandalize when she came to protest that day.

It is arbitrary to draw a cutoff at one's teenage years and assume a person's sense of responsibility switches on at a particular birthday. Research shows that "psychosocial capabilities that improve decision making and regulate risk taking— such as impulse control, emotion regulation, delay of gratification, and resistance to peer influence—continue to mature well into young adulthood." James C. Howell et al., *Bulletin 5: Young Offenders & an Effective Response in the Juvenile & Adult Systems: What Happens, What Should Happen, & What We Need to Know*, Doc. No. 242935, at 17, Papers From the Study Group on Transitions From Juvenile Delinquency to Adult Crime, Nat'l Inst. Of Just., U.S. Dep't Of Just. (July 2013) (unpublished) (citation omitted). Thus, "[y]oung adults simply do not have the physiological capacity of adults over age 25 to exercise judgment or control impulses," *id*. at 18, and it is "difficult to justify applying permanent or long-term sanctions to young offenders," including young adults in their early twenties, Carrie Mulford, *Explanations for Offending*, Nat'l Inst. Of Just., U.S. Dep't Of Just., 2 (May 2014).

The Sentencing Guidelines fail to consider or account for this research. By contrast, "[r]elying on both the scientific evidence and the societal evidence of

national consensus," lower courts have "conclude[d] that the hallmark characteristics of juveniles that make them less culpable also apply to 18-year-olds." *Cruz v. United States*, 2018 WL 1541898, at *25 (D. Conn. Mar. 29, 2018); *see also id.* at *23-25 (discussing uncontested, credible expert testimony that the scientific findings that underpin conclusions about those under the age of 18 also apply to 18-year-olds). Accordingly, it is contrary to both conventional wisdom and brain science to impose increased sanctions on Ms. Giordano now based on her difficulties making sound decisions under duress when she was a twenty year old.

It is also important to remember that Ms. Giordano's actions occurred not long after a negative high school experience that was disrupted by the COVID pandemic. In her senior year of high school, eighty-seven percent of public schools reported that the pandemic negatively impacted student socio-emotional development, according to the National Center for Education Statistics. https://nces.ed.gov/whatsnew/press_releases/07_06_2022.asp (last accessed March 12, 2025). The pandemic also adversely impacted student's mental health, significantly amplifying issues such as frustration, stress and sadness. "Impact on Covid-19 on the lives and mental health of children and adolescents." Li, Fengxiao, Front Public Health, 2022 Oct 18, https://pmc.ncbi.nlm.nih.gov/articles/PMC9623428/.

The Sentencing Guidelines also fail to account for the impact that the pandemic would have had on younger offenders who had recently spent their developmental years in isolation. Ms. Giordano was in tenth grade when the

pandemic hit. From March, she was told to stay home from school. At first, it was day to day. Then, week to week. Finally, she was told that it would last for the rest of the year. Schools were nowhere near prepared and very little was learned. Extracurricular activities were entirely suspended, as were any interpersonal interactions whatsoever. She could not see her friends or even go out to the store.

Her junior year was marked by class on a laptop. Like most junior students, she attempted to adjust to having a social persona in a small square, either with a camera on or camera off. It wasn't until February 2021 that hybrid learning began. In May 2021, four weeks before the end of the school year, Baltimore County opened up schools four days per week for in-person instruction.

All of these factors had an impact on Ms. Giordano. Her actions on July 24, 2024 demonstrate exactly a "lack of maturity and underdeveloped sense of responsibility, leading to recklessness, impulsivity, and heedless risk-taking"; a vulnerability "to negative influences and outside pressures"; and "character traits that are 'less fixed' than those of an adult."

### B. The Nature and Circumstances of the Offense

This offense, in particular as it relates to Ms. Giordano, can best be described as political protest gone awry. On that day, Israeli Prime Minister Benjamin Netanyahu gave a joint address to the U.S. Congress, drawing thousands of protestors. https://www.usnews.com/news/politics/articles/2024-07-24/netanyahu-visit-sparks-wave-of-protests-in-dc-with-all-sides-criticizing-the-israeli-pm. While there were reports of individuals pushing up against police lines, there is no

allegation that Ms. Giordano participated in anything remotely violent or was associated with anyone acting with violence. Ms. Giordano was one of several individuals who spraypainted "GAZA" on the Columbus Circle Fountain and takes full responsibility for her actions.

### C. **The Need for the Sentence Imposed**

18 U.S.C. § 3553(a) directs the Court to consider four objectives of federal sentencing and to impose a sentence that is "sufficient, but not greater than necessary" to achieve those goals. The first purpose is to "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A). Ms. Giordano accepted responsibility for her actions and has been compliant on supervision. She pleaded guilty early, in fact as soon as she possibly could. She lost her dream job and has remain unemployed as a result. She has been in therapy for her entire time under pretrial supervision and her letter to the Court demonstrates her remorse and contrition.

### D. **A Time-Served Sentence is Not an Unwarranted Sentencing Disparity and No Additional Deterrence is Necessary**

A time-served sentence is appropriate here. Ms. Giordano committed a property offense during a political protest. It is impossible to ignore, as far as general deterrence goes, that nearly 4000 people who were engaged in all forms of political protest ranging from destruction of property to sedition have recently been pardoned. Some of those individuals evaded punishment entirely. It is historically unclear what message the executive and thus the courts are sending to the public

regarding general deterrence of crimes committed during political protests. Whatever that message may be, any sentence is likely to create an unwarranted sentencing disparity within the context of the January 6th pardons.

Ms. Giordano falls within a guideline range of 0 to 6 months, which permits any sentence that the Court would feel appropriate. There has been no demonstration that further supervision of Ms. Giordano is appropriate or necessary. Her near-adolescent actions in this case were impulsive and in the moment. Her poor choices arose out of spontaneity and passion, not out of criminality or malice. They are not the type of choices where a different sentence would deter her. Beyond that, Ms. Giordano has shown herself to be a warm, caring and empathetic person. She has worked with children, excels in work with the disabled and is known for being the first to help those in need.

Her remorse and understanding of her actions are best reflected by her conduct since this case. She has been entirely compliant, has reshaped her mindset through therapy and has been steadfast in her desire to take responsibility for her offense. She has done so despite losing a job that had been the center of her identity. Instead of blaming others, she has redoubled her efforts to become productive in society.

## Conclusion

A sentence of time served may seem lenient. But Ms. Giordano has no criminal record and has demonstrated through her compliance that she is not in need of further rehabilitation. She has suffered significant consequences for her

actions by losing her job and she has learned that she must make better decisions in life. She has already taken steps to better herself in light of this incident. Supervised release or probation is simply not necessary for Ms. Giordano.

Respectfully submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER


\_\_\_\_\_/s/_____
EUGENE OHM
Assistant Federal Public Defender
625 Indiana Avenue, N.W., Suite 550
Washington, D.C. 20004
(202) 208-7500